UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
MAUREEN REDDY,                      )
                                    )
         Plaintiff,                 )
                                    )
         v.                         )      CIVIL ACTION
                                    )      NO. 13-13016-JLT
LOWE'S COMPANIES, INC. and          )
EVOLUTION LIGHTING, LLC,            )
                                    )
         Defendants.                )
                                    )
```

MEMORANDUM

YOUNG, D.J.                                    November 18, 2014

I.   INTRODUCTION

This Markman memorandum explains this Court's construction
of design patent D677,423 (the "'423 patent") which claims an
"ornamental design for a bathroom vanity light shade." U.S.
Patent No. D677,423 (filed Mar. 8, 2012). Compl., Ex. A, ECF
No. 1-2. On June 4, 2014, at a Markman hearing, this Court,
acting on behalf of Judge Tauro to whom this case was originally
drawn, orally construed the patent at bar. Pursuant to the
Court's internal procedures, the case was subsequently
transferred to Judge Talwani for all further proceedings. This
memorandum details the Court's reasoning.

## A. Procedural History

The plaintiff, Maureen Reddy ("Reddy"), brings suit against Lowe's Companies, Inc. and Evolution Lighting, LLC (collectively, the "Defendants"), accusing the Defendants of infringing her design patent. Compl. 6. The parties filed preliminary claim construction briefs on April 30, 2014. Defs.' Br. Claim Construction ("Defs.' Opening Br."), ECF No. 29; Pl.'s Opening Claim Construction Br. ("Pl.'s Opening Br."), ECF No. 31. The Defendants replied on May 16, 2014. Defs.' Reply Pl.'s Br. Claim Construction ("Defs.' Reply"), ECF No. 37. Reddy filed her reply brief on May 29, 2014. Pl.'s Reply Defs.' Br. Claim Construction ("Pl.'s Reply"), ECF No. 38.

This Court held a <u>Markman</u> hearing on June 4, 2014, at which time it adopted the claim construction discussed in this memorandum. <u>See</u> Elec. Clerk's Notes, June 4, 2014, ECF No. 42. The next day, June 5, 2014, this case was transferred to Judge Talwani's session of the Court. Elec. Notice, June 5, 2014, ECF No. 41. Following the <u>Markman</u> hearing and the reassignment, the parties continued to litigate the case in Judge Talwani's session and scheduled a trial for November 3, 2014. Set/Reset Scheduling Order Deadlines, ECF No. 64.

## B. Patent Description

The '423 patent, entitled "Bathroom Vanity Light Shade," claims an "ornamental design for a bathroom vanity light shade,

as shown and described" in five attached figures. '423 Patent.
The '423 patent contains brief descriptions of each of the five
figures, which mainly serve to identify the perspective from
which the figures are drawn (e.g., "FIG 1 is a front perspective
view from below of a bathroom vanity light shade showing my new
design"). Id. Below the descriptions of the individual figures
is a general description of the invention, which reads as
follows:

> The bathroom vanity light shade is an ornamental
> fixture consisting of a rectangular, metal rod
> skeleton, wrapped in fabric on three sides (front
> side, left side, right side), with a stationary
> acrylic diffuser bottom. The bathroom vanity light
> shade mounts on the wall with a top/back exposed
> mounting rod.

Id.

## II.  ANALYSIS

### A.  Defining Design Patents

Under United States patent laws, inventors may claim two
different types of patents: utility patents, which cover "new
and useful" inventions, 35 U.S.C. § 101, and design patents,
which apply to "new, original and ornamental design[s] for an
article of manufacture," 35 U.S.C. § 171.  See also, e.g.,
International Seaway Trading Corp. v. Walgreens Corp., 589 F.3d
1233, 1238 (Fed. Cir. 2009) (contrasting requirements for
utility patents versus design patents).  Befitting their
different names, design patents "contemplate not so much utility

3

as appearance," <u>Gorham Mfg. Co.</u> v. <u>White</u>, 81 U.S. 511, 524
(1871), and as such, the patent's focus on aesthetic impression
is somewhat akin to copyright protection for works of art.  <u>See</u>
<u>Mazer</u> v. <u>Stein</u>, 347 U.S. 201, 218 (1954).

Accordingly, the scope of a design patent varies from that
of a utility patent: it is the form of the object that is
claimed, not the object itself.  "In a design patent
application, the subject matter which is claimed is the design
embodied in or applied to an article of manufacture (or portion
thereof) and not the article itself."  <u>Manual of Patent</u>
<u>Examining Procedure</u> ("MPEP") (9th ed. Rev. Mar. 2014) § 1502
(citing <u>Ex parte Cady</u>, 1916 C.D. 62, 232 O.G. 621 (Comm'r Pat.
1916)).  "The design for an article consists of the visual
characteristics or aspect displayed by the article.  It is the
appearance presented by the article which creates an impression
through the eye upon the mind of the observer."  <u>Id.</u> § 1502, ¶
15.42.  Only the ornamental aspects of the design are protected:
any functional elements are beyond the scope of the patent.
<u>Richardson</u> v. <u>Stanley Works, Inc.</u>, 597 F.3d 1288, 1293-94 (Fed.
Cir. 2010).

Design patents differ in scope from utility patents across
several key distinctions.[1]  First, the design patent's focus is

---

[1] Despite these differences, design patents are nonetheless
subject to essentially the same general requirements as are

4

on its figures, not its text, and "[n]o [written] description, other than a reference to the drawing, is ordinarily required." 37 C.F.R. § 1.153(a); see also MPEP § 1503.01, ¶ 15.05(II) ("No description of the design in the specification beyond a brief description of the drawing is generally necessary, since as a rule the illustration in the drawing views is its own best description." (citing In re Freeman, 23 App. D.C. 226 (App. D.C. 1904))). Thus, while the metes and bounds of a utility patent are established by the language of its claims, the metes and bounds for a design patent are established by its figures. See Rebecca Tushnet, The Eye Alone is the Judge: Images and Design Patents, 19 J. Intell. Prop. L. 409, 409-10 (2012) ("The law requires a 'written description' of patent claims, but the drawing is the written description for design patents."). Second, unlike utility patents, design patents are limited to only a single claim. 37 C.F.R. § 1.153(a) ("More than one claim is neither required nor permitted."). Finally, the design patent drawings themselves are subject to relatively stringent technical requirements. See 37 C.F.R. § 1.152; MPEP § 1503.02.

## B. Design Patent Claim Construction

As with utility patents, design patents are subject to claim construction by the court pursuant to Markman v. Westview

---

utility patents, e.g., novelty. 35 U.S.C. § 171; Peter Lee & Madhavi Sunder, Design Patents: Law Without Design, 17 Stan. Tech. L. Rev. 277, 281-82 (2013).

Instruments, Inc., 517 U.S. 370 (1996).  In Egyptian Goddess,

Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008) (en banc),

the Federal Circuit established the principles a district court

must employ when it so constructs.  This decision controls the

instant case and as such, the Court will consider in depth both

it and its progeny.

### 1.    The Egyptian Goddess Framework

The Federal Circuit starts with the premise that the

district court has considerable discretion in constructing

design patents, and as such, the Federal Circuit does not

"prescribe[] any particular form that the claim construction

must take," but rather "recognize[s] that design patents

typically are claimed as shown in drawings, and that that claim

construction is adapted accordingly."  Id. at 679 (internal

citations and quotation marks omitted).  Accordingly, the

district court is not required to "attempt to provide a detailed

verbal description of the claimed design."  Id.  Instead,

"[g]iven the recognized difficulties entailed in trying to

describe a design in words, the preferable course ordinarily

will be for a district court not to attempt to 'construe' a

design patent claim by providing a detailed verbal description

of the claimed design."  Id.

The Federal Circuit clarified its "preferable course"

language, concluding that a verbal description could be

attempted, but warning in relatively strong terms that such an

endeavor is inadvisable:

> [I]t is important to emphasize that a district court's
> decision regarding the level of detail to be used in
> describing the claimed design is a matter within the
> court's discretion, and absent a showing of prejudice,
> the court's decision to issue a relatively detailed
> claim construction will not be reversible error.  At
> the same time, it should be clear that the court is
> not obligated to issue a detailed verbal description
> of the design if it does not regard verbal elaboration
> as necessary or helpful.  In addition, in deciding
> whether to attempt a verbal description of the claimed
> design, the court should recognize the risks entailed
> in such a description, such as the risk of placing
> undue emphasis on particular features of the design
> and the risk that a finder of fact will focus on each
> individual described feature in the verbal description
> rather than on the design as a whole.  In this case,
> for example, the district court came up with a
> detailed verbal description of the claimed design.  We
> see no inaccuracy in the court's description, and
> neither party has pointed to any prejudice resulting
> from the court's interpretation.  Yet it is not clear
> that the considerable effort needed to fashion the
> verbal description contributed enough to the process
> of analyzing the case to justify the effort.

Id. at 679-80.

Notwithstanding this warning, the trial court does not

abdicate all interpretative responsibilities when faced with a

design patent.  Rather:

> [A] trial court can usefully guide the finder of fact
> by addressing a number of other issues that bear on
> the scope of the claim.  Those include such matters as
> describing the role of particular conventions in
> design patent drafting, such as the role of broken
> lines; assessing and describing the effect of any
> representations that may have been made in the course
> of the prosecution history; and distinguishing between

>        those features of the claimed design that are
>        ornamental and those that are purely functional.

Id. at 680 (internal citations omitted). The district court

also could play a role in highlighting for the fact finder

"various features of the claimed design as they relate to the

accused design and the prior art." Id. Finally, the Egyptian

Goddess court closed by emphasizing that the choice in how to

construe design patents was ultimately committed in large part

to the discretion of the district court:

>        Providing an appropriate measure of guidance to a jury
>        without crossing the line and unduly invading the
>        jury's fact-finding process is a task that trial courts
>        are very much accustomed to, and any attempt by an
>        appellate court to guide that process in detail is
>        likely to do more harm than good. We therefore leave
>        the question of verbal characterization of the claimed
>        designs to the discretion of trial judges, with the
>        proviso that as a general matter, those courts should
>        not treat the process of claim construction as
>        requiring a detailed verbal description of the claimed
>        design, as would typically be true in the case of
>        utility patents.

Id.

## 2.    Interpreting Egyptian Goddess

In the six years since Egyptian Goddess, the Federal Circuit

and the district courts have generally used the court's grant of

discretionary authority to eschew textual interpretations of

design patents, except under limited circumstances.

In some cases, courts will issue written constructions if a

design patent incorporates both unprotected functional elements

and protected ornamental elements, in order to focus the fact finder's attention on the latter. See, e.g., Richardson, 597 F.3d at 1293; Nordock Inc. v. Sys. Inc., 927 F. Supp. 2d 577, 587-90 (E.D. Wis. 2013); Unique Indus., Inc. v. 965207 Alberta Ltd., 722 F. Supp. 2d 1, 8-9 (D.D.C. 2009).[2]

But many courts have held that inquiries into functionality or prosecution history are more appropriate at a later stage in the litigation, such as summary judgment or jury instructions. In Depaoli v. Daisy Manufacturing Co., Inc., No. 070-cv-11778-DPW, 2009 WL 2145721 (D. Mass. July 14, 2009) (Woodlock, J.), Judge Woodlock concluded that even if prosecution history and functionality are relevant, in order to prevent placing "undue emphasis" on certain elements of the design, they ought be addressed at the summary judgment or jury instruction stage, rather than the claim construction stage. Id. at *5; see also Dexas Int'l, Ltd. v. Office Max Inc., No. 6:07-cv-396, 2009 WL 252164, at *5-6 (E.D. Tex. Jan. 30, 2009) ("Dexas II") (same).

Similarly, while courts have recognized that Egyptian Goddess allows for a judge's examination of prior art, they have generally left such considerations for post-claim construction interpretations, mainly to avoid putting "undue emphasis on

---

[2] Even when functional elements are implicated, however, courts will generally defer to the figures unless the features are indisputably and wholly functional. See Good Sportsman Mktg. LLC v. Li & Fung Ltd., No. 6:07-cv-395, 2010 WL 2640385, at *3-4 (E.D. Tex. June 29, 2010).

particular features of the design." OraLabs, Inc. v. Kind Group LLC, No. 13-cv-00170-PAB-KLM, 2014 WL 1630690, at *4 (D. Colo. Apr. 24, 2014) (internal citations and quotation marks omitted). These courts have viewed prior art as part of the infringement analysis, not the construction analysis. Apple, Inc. v. Samsung Elecs. Co., Ltd., No. 11-CV-01846-LHK, 2012 WL 3071477, at *3 (N.D. Cal. July 27, 2012) (holding that "the limitation in scope of a design patent in light of prior art is necessarily folded into the infringement analysis").

By and large, in the wake of Egyptian Goddess, district courts have heeded the Federal Circuit's warning of the dangers of "undue emphasis on particular features" of the patented design and "away from consideration of the design as a whole." Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1302-03 (Fed. Cir. 2010). Accordingly, they have declined to provide detailed claim constructions of design patents. See, e.g., OraLabs, 2014 WL 1630690, at *5; Apple, 2012 WL 3071477, at *2.[3]

_____

[3] Some courts have elected to provide detailed verbal descriptions, of course, and the Defendants point to three: Dexas v. Tung Yung International (USA) Inc. and Tung Yung International, LTD., No. 6:07-cv-334, 2009 WL 838174, at *2 (E.D. Tex. Feb. 25, 2009) ("Dexas III")(affirming a claim construction provided in an earlier order, 2008 WL 4831348 (E.D. Tex. June 24, 2008) ("Dexas I")); Shop*TV, Inc. v. Bed Bath & Beyond, Inc., No. 09-cv-00057-REB-CBS, 2009 WL 1965494, at *3 (D. Colo. July 8, 2009); and Unique Industries Inc., 722 F. Supp. 2d. 1. Defs.' Reply 6. None of these cases persuades the Court that a detailed claim construction in this case would be necessary or helpful. The Dexas III court merely declined to

10

## C.  Proposed Constructions

As is common in patent infringement cases, the parties propose dramatically different claim constructions:

| Reddy | "The ornamental design for a bathroom vanity light shade, as shown and described in Figures 1-5." |
|---|---|
| Defendants | "A light shade adapted to fit over an existing wall light fixture having (i) a front rectangular surface in the form of a flat plane comprising a fabric surface, (ii) substantially square side surfaces in the form of flat planes comprising fabric surfaces, (iii) a flat rectangular bottom surface comprising an acrylic diffuser, and (iv) having open top and back surfaces with a metal rod extending between the upper rear corners of the side surfaces, wherein all corners are right angles and all edges are straight and are either vertical or horizontal." |

Pl.'s Opening Br. 6; Defs.' Opening Br. 10.

As an initial matter, the Defendants' proposed construction, which focuses attention on a list of specific elements rather than the overall design presented in the figures, creates a "risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole."  Egyptian

---

vacate the detailed claim construction it had authored prior to Egyptian Goddess.  Indeed, in an opinion authored by the same judge in a related case that post-dated Egyptian Goddess, the court declined to offer a detailed claim construction for the very same patents, noting that "claim constructions like those adopted in [Dexas I] are neither necessary nor helpful in this case."  Dexas II, 2009 WL 252164 at *3.  The written constructions offered by the courts in Shop*TV and Unique Industries are equally unavailing because they are far more general than the Defendants propose here.

Goddess, 543 F.3d at 680; see also Amini Innovation Corp. v. Anthony Cal., Inc., 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("It is the drawings in the patent, not just one feature of the claimed design, that define the patented design."). Accordingly, this Court rejects the Defendants' construction in favor of Reddy's proposal, which is a simpler interpretation of the patent that accords more closely with the types of constructions adopted by post-Egyptian Goddess courts. Nonetheless, the Defendants raise several arguments which the Court will address.

### 1. Claim Description Language

First, the Defendants highlight two sentences in the patent's description, which they argue limit the '423 patent's scope to embody only certain materials, and, accordingly, must be considered during the claim construction. See Defs.' Opening Br. 3-4; Defs.' Reply 7-9.

As discussed above, and reproduced below, the patent in question contains a two-sentence general description (the "written description paragraph") that follows the individual figure descriptions:[4]

> The bathroom vanity light shade is an ornamental
> fixture consisting of a rectangular, metal rod
> skeleton, wrapped in fabric on three sides (front
> side, left side, right side), with a stationary
> acrylic diffuser bottom.  The bathroom vanity light

---

[4] There is also a one-sentence disclaimer that indicates that broken lines are not part of the claimed design. '423 Patent.

shade mounts on the wall with a top/back exposed
mounting rod.

'423 patent. The Defendants argue that this paragraph means
that "the design of the bathroom vanity light shade in the '423
patent requires at least a fabric covering on three sides
(front, left, and right), and a stationary acrylic diffuser
bottom," even though such features are not shown in the
illustration. Defs.' Reply 7. In so doing, they make two
arguments: first, a general argument that all words in a patent
must be given effect, and that in order to do that here, the
Court must adopt their proposed construction, and second, a
specific argument that the materials mentioned in the paragraph
are protected "surface treatment" elements of the design. See
id. at 3-5, 7-8. The question for this Court, then, is what
weight, if any, this paragraph ought be given in light of those
arguments.

### a.    General Argument About Incorporation

Defendants posit that the written description paragraph
ought be incorporated into the patent. Their argument, while
not a model of clarity, appears to be two-fold: (1) the patent
claims an "ornamental design for a bathroom vanity light shade,
as shown and described," '423 patent (emphasis added), and (2)
in order to avoid rendering "the claim language referencing the
description . . . [as] superfluous and meaningless," that

language must be incorporated into the patent.  Defs.' Opening
Br. 3.

    The Defendants are correct that there is a general claim
construction axiom which holds that, if possible, "[a] claim
construction that gives meaning to all terms of the claim is
preferred over one that does not do so."  Id. at 4 (quoting
Merck & Co., Inc. v. Teva Pharm. USA, Inc., 395 F.3d 1364, 1372
(Fed. Cir. 2005)).  This general rule of construction, however,
conflicts with one specific to design patents: that "[i]t is the
drawings of the design patent that provide the description of
the invention."  In re Daniels, 144 F.3d 1452, 1456 (Fed. Cir.
1998).  Indeed, "[u]nlike utility patents, design patents do not
describe claimed designs in words . . . . Accordingly, design
patents have almost no scope; they are limited to what is shown
in the application drawings."  Concept Innovation v. CFM Corp.,
No. 04-C-3345, 2004 WL 2812109, at *1 (N.D. Ill. Dec. 7, 2004)
(citing Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed.
Cir. 1995)).  Under this "figure-only" framework, any written
description that goes beyond the scope of the figures would be
unprotected by the patent, and thus ought not be part of the
construed claim.  Thus, the references to "wrapped in fabric"
and an "acrylic diffuser bottom," since they are not shown in
the figures, would stretch beyond the patent.

In response, the Defendants point to 37 C.F.R. § 1.153, which governs the descriptions required of a design patent, and which states that "[n]o description, other than a reference to the drawing, is ordinarily required." 37 C.F.R. § 1.153(a). The use of "ordinarily," they argue, "signifies that cases may exist in which it is anticipated that a written description may be required in order to properly delineate the claimed design and distinguish it over prior art." Defs.' Reply 5. The Defendants are correct that the word "ordinarily" invites the possibility of an exception, as does the Patent Examiner's Manual, which states that "while not required, such a [written] description is not prohibited and may be incorporated, at applicant's option, into the specification or may be provided in a separate paper." MPEP § 1503, ¶ 15.59(II).

These provisions, however, provide little comfort to the Defendants. The Defendants do not point to any case law indicating that a district court can incorporate features described in writing, but not shown in the figures, into its construction. Moreover, the case they do rely on, Arminak & Associates, Inc. v. Saint-Gobain Calmar, Inc., 501 F.3d 1314 (Fed. Cir. 2007), abrogated by Egyptian Goddess, 543 F.3d 665, stands for the proposition that Federal Circuit case law "does not prohibit detailed claim construction of design patent drawings. It merely disapproves claim construction that goes

15

beyond the novel, nonfunctional ornamentation features visually represented by the claimed drawings." Defs.' Reply 4 (emphasis omitted) (quoting Arminak, 501 F.3d at 1321). Such a holding still requires the constructed element to be apparent in the features that are "visually represented" in the drawings; it says nothing about features that are represented only in writing. Indeed, by stating that it "disapproves claim construction that goes beyond . . . features visually represented" in the drawings, the Federal Circuit suggested that writing-only features are to be disregarded. Id. Similarly, the regulations setting out the process by which design patents are submitted requires that "[t]he design must be represented by a drawing." 37 C.F.R. § 1.152. The regulation does not say that the design can be represented by a written description alone and, again, suggests the opposite.

In light of this context, this Court holds that the United States Patent and Trademark Office regulations that allow a written description are limited only to written descriptions that clarify features on an existing drawn figure: they do not authorize written descriptions that add features not present on the figure. Accordingly, this Court does not construe "fabric side" and "acrylic diffuser bottom" as part of the patent claim, since these specific features are not shown in the figure.

### b. Surface Treatment Features

The Defendants concede that the fabric covering and acrylic diffuser bottom are "not shown in the illustrations." Defs.' Reply 7. Nonetheless, they argue that such features must be included in the claim because they are "surface treatments." The MPEP defines surface treatments as follows:

> The ornamental appearance of a design for an article includes its shape and configuration as well as any indicia, contrasting color or materials, graphic representations, or other ornamentation applied to the article ("surface treatment"). Surface treatment must be applied to or embodied in an article of manufacture. Surface treatment, per se (i.e., not applied to or embodied in a specific article of manufacture), is not proper subject matter for a design patent under 35 U.S.C. 71. Surface treatment may either be disclosed with the article to which it is applied or in which it is embodied and must be shown in full lines or in broken lines (if unclaimed) to meet the statutory requirement.

MPEP § 1503.02, ¶ 15.50.05(IV).

The Defendants argue that the fabric and acrylic in the design patent are surface treatments, and thus ought be part of the construction. Defs.' Reply 7-8. This argument fails. Although the MPEP states that "materials" can be part of a surface treatment (and thus protected), the word "materials" must be read in the context of the sentence in which it appears. Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 559 U.S. 280, 287 (2010) (translating the statutory

interpretation canon noscitur a sociis to "a word may be known
by the company it keeps"). In the MPEP, "materials"
is part of the list item "contrasting colors or materials,"
which itself is one of several items connoting visual design
(e.g. "graphic representations" or "ornamentation"). In this
context, then, the word "materials" means the use of material to
create a visual design (e.g., a cross-hatch pattern), rather
than the underlying "foundational material" (e.g., the material
of which the product is made).

Even if the fabric and acrylic materials were considered
surface treatments, they still ought not be incorporated into
the construction. The MPEP requires that the surface treatment
"must be shown in full lines or in broken lines (if unclaimed)
to meet the statutory requirement." MPEP § 1503.02, ¶
15.50.05(IV). Here, there is no specific indication of fabric
or acrylic material in the figures. At best, there is an
indication of translucent or transparent materials (as defined
by the use of oblique lines, see MPEP § 1503.02, ¶ 15.48(II)),
but there is no suggestion in the figures as to what materials
must be used to create that transparent effect.

### c. Necessary Complications

To be sure, the references to fabric sides and a stationary
acrylic diffuser bottom in the patent description are troubling,
and they probably ought not have been included when the patent

was issued. But considering that design patents only cover what appears in the figures, the lack of case law supporting a construction of a design patent element mentioned only in a written description, and the fact that the materials do not appear to meet the "surface treatment" classification in the MPEP, this Court declines to incorporate these sentences into its construction. Rather, the Court will hold off determining their precise import, if any, until later in the litigation, when the parties can address the issue of whether these elements are functional, or whether they are akin to a "preferred embodiment" in a utility patent.[5]

Such a ruling will effectively read these two sentences out of the patent, which this Court recognizes as a disfavored outcome. Cf. Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1382 (Fed. Cir. 2006). Nonetheless, in light of the case law which strongly teaches that figures, not text, control the bounds of design patents, the emphasis on ornamentation in design patent law, and the lack of controlling case law on superfluous written description language in a design

---

[5] A preferred embodiment in a utility patent describes an embodiment of the invention, but does not limit the claim to only that embodiment. See, e.g., Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 905-06 (Fed. Cir. 2004); Teleflex, Inc. v. Ficosa North Am. Corp., 299 F.3d 1313, 1328 (Fed. Cir. 2002) ("We have 'cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.'" (quoting Comark Commc'n, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998))).

patent, the Court's ruling will do less violence to the patent than would incorporating unprotected elements into the claim.

## 2.    **Prosecution History and Prior Art**

The Defendants next argue that the Court ought consider prior art and the '423 patent's prosecution history when construing the claim. Defs.' Opening Br. 4-9. Reddy argues that such interpretative steps are inappropriate at the claim construction stage and ought be left until the jury instruction phase of litigation. See Pl.'s Reply 5-7.

As discussed above, Egyptian Goddess specifically provides that prosecution history and prior art are "helpful" and can be "useful[]" to a finder of fact. 543 F.3d at 680. District courts interpreting Egyptian Goddess have, however, generally chosen to issue such guidance in the form of jury instructions, rather than as part of the claim construction. See, e.g., OraLabs, 2014 WL 1630690, at *5; Blackberry Ltd. v. Typo Prods., LLC, No. 14-cv-00023-WHO, 2014 WL 1318689, at *3 (N.D. Cal., Mar. 28, 2014); Depaoli, 2009 WL 2145721, at *10. But see Apple, 2012 WL 3071477 at *9-10 (considering prosecution history as part of its claim construction opinion). Postponing such adjudication, as Judge Woodlock reasoned, avoids the risk of placing "undue emphasis" on certain elements of a design, which is "precisely the danger against which the Egyptian Goddess court cautioned." Depaoli, 2009 WL 2145721, at *5. Such

reasoning applies here, for the reasons Judge Woodlock
articulated.

There are also two additional considerations that apply in
this case.  First, the discussion of prior art is quite
undeveloped.  The Defendants mention three other U.S. patents:
Patent 7,156,537, 4,045,665, and 7,213,950.  Defs.' Opening Br.
4-6.  While the Defendants do discuss some of the similarities
between the prior art and the '423 patent, such discussion
focuses on the presence or absence of specific features, rather
than similarities in the overall impressions of the two patents,
which is the more appropriate focus when interpreting design
patents.  See Defs.' Opening Br. 4-6, 8-9; MRC Innovations, Inc.
v. Hunter Mfg., LLP, 747 F.3d 1326, 1335 (Fed. Cir. 2014).
Moreover, the Defendants mention only three patents, all
utility, even though the '423 patent mentions twenty-four prior
art references cited by the patent examiner (twenty of them
design patents).  To be sure, utility patents can constitute
relevant prior art when considering design patents, see
Application of Aslanian, 590 F.2d 911, 913-14 (C.C.P.A. 1979),
although how utility patents are to be used for that objective
is not well established in the case law, see, e.g., Simmons,
Inc. v. Koronis Parts, Inc., No. Civ. 00-1984ADM/RLE, 2001 WL
1095008, at *3 (D. Minn. Sept. 17, 2011).  In this case,
however, the Defendants' complete omission of any design patents

21

(especially when design patents constitute the bulk of the references cited by the examiner), suggests that the prior art analysis is not yet fully briefed, and that any ruling on such a basis is premature.

Second, while the prosecution history discussion is more developed in the briefing than the prior art analysis, it is, at best, ambiguous, and risks placing "undue emphasis" on certain elements of the design, in direct contravention of the teachings of Egyptian Goddess. Depaoli, 2009 WL 2145721, at *5. The relevant prosecution history is as follows.

On November 7, 2012, the patent examiner determined that while the patent generally was proper, "[t]he specification is objected to because the descriptions do not accurately describe the views shown in the drawing disclosure." Prosecution History of the '423 Patent, Office Action Summary 7, ECF No. 32-2.[6] The examiner noted that the perspective labels on the figures were incorrect, stating: "the drawings include all perspective views of the claimed design; however, the views are described at elevation views." Id. The office then required Reddy to amend the figure descriptions to reflect their proper orientation. The examiner also required Reddy to describe how broken lines were used in the figures, as well as to correct the drawings to

---

[6] This page can be found on page 30 of the prosecution history exhibit filed at ECF No. 32-2.

remedy the images' "poor line quality." Id. at 7-8. Next, the
examiner noted "several inconsistencies among the views," such
as the fact that one figure indicated that a side of the design
was open, while "the remaining views indicate the design has
four closed fabric sides, a bottom acrylic closed surface and a
single open side on the rear of the design." Id. at 8-9.
Finally, for these purposes, the examiner also criticized the
shading of the figure, noting that the applicant "indicates the
bottom rectangular surface is an acrylic diffusing surface;
however, the proper oblique line shading is not included on the
bottom surface to indicate transparent/translucent/reflective."
Id. at 9. In response to these concerns, Reddy amended her
figure descriptions accurately to reflect the orientation of
their associated figures, and redrew the figures "to show clean
uniform, and well defined lines" as well as the appropriate
shading. Prosecution History of the '423 Patent, Reddy
Resp./Am. Mar. 8, 2012, at 3, ECF No. 32-2.[7]

    The Defendants argue that Reddy's responses during
prosecution estop her here, stating that:

        The applicant's response to the Office Action
        indicates an acceptance of the examiner's objection,
        and creates an estoppel that limits the claim to a
        diffuser as stated in the description, i.e., a
        stationary acrylic diffuser bottom surface.
        Furthermore, the examiner's reference to the

_____

    [7] This page can be found on page 18 of the prosecution
history exhibit filed at ECF No. 32-2.

description as indicating that the design incorporated
an acrylic diffusing surface would also require that
the design consists of a metal rod skeleton wrapped in
fabric on three sides, as recited in the '423 patent.
In light of the drawings that show nothing more than a
right rectangular prism with some surfaces showing one
of two shadings and others being open, the written
description referenced in the claim is necessary to
provide essential ornamental features to the otherwise
unornamented shape depicted in the drawings.

Defs.' Opening Br. 7.

The Defendants' argument is unavailing. The focus of the

examiner's comments was on ensuring that the figures themselves

were clear, internally consistent, and in accordance with USPTO

shading and line-definition requirement documents. This would

suggest that the shading and draftsmanship of the figure was

important to the USPTO, but not necessarily that the material

used was important. Accordingly, given that these prosecution

remarks could be subject to multiple interpretations, and given

that prosecution history is often ambiguous and "thus is less

useful for claim construction purposes," Phillips v. AWH Corp.,

415 F.3d 1303, 1317 (Fed. Cir. 2005), this Court declines to

incorporate the prosecution history into the construction. The

Court's ruling is, of course, without prejudice to a future

assessment of prosecution history at the jury instruction stage.

## III. CONCLUSION

For the reasons stated above, on June 4, 2014, this Court

ADOPTED Reddy's proposed claim construction: "The ornamental

24

design for a bathroom vanity light shade, as shown and described in Figures 1-5." Elec. Clerk's Notes, June 4, 2014, ECF No. 42.

This construction is without prejudice to any future jury instructions on functional versus ornamental elements, prosecution history, prior art, or any other similar factors.

**SO ORDERED.**

William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE